IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

TERRENCE SKATTEBO,

    Petitioner,                      No. CIV S-02-1107 DFL KJM P

   vs.

TOM L. CAREY, Warden, et al.,

    Respondents.            FINDINGS AND RECOMMENDATIONS

/

        Petitioner is a state prison inmate proceeding pro se with a petition for a writ of habeas corpus challenging his Placer County conviction for second degree murder and the finding that he used a dangerous weapon. He alleges that trial and appellate counsel were ineffective and certain jury instructions were not given in violation of his federal constitutional rights.

I. <u>Factual And Procedural Background</u>

        An information was filed on February 23, 1998, charging petitioner with murder and various enhancements. CT 4-7.[1] Trial began on June 8, 1998. CT 45. This jury acquitted

/////

---

[1] CT is the Clerk's Transcript, ACT the Augmented Clerk's Transcript, and RT the Reporter's Transcript of the state court proceedings, lodged with this court.

petitioner of first degree murder but was unable to reach a verdict on the lesser included offense of second degree murder. CT 159-160.

The second trial began November 3, 1998; on November 10, 1998, the jury found petitioner guilty of second degree murder. CT 199.

Petitioner appealed his conviction to the Court of Appeal for the Third Appellate District, arguing that the jury had not been instructed adequately. Based on a reading of the transcripts of the state trial, this court finds the Court of Appeal's summary accurately presents the facts of the offense:

> On the evening of October 23, 1997, Kathy Anthon, David Green, Otto Biggs, and the victim Kenny Towe, visited Mark Salvador at a trailer park in Roseville to resolve a dispute over a bicycle. Defendant's uncle allowed Salvador to stay in a small trailer near the larger trailer where defendant and his uncle lived. Toward the end of a loud argument occurring in the small trailer, defendant, who was in the large trailer with friends, his uncle, and a roommate, stepped outside, yelling "What's going on?" As Biggs, Towe, Green, Anthon, and Salvador walked out of the small trailer, defendant armed himself with a metal jack handle. [fn. 1] Biggs, Anthon, and Salvador assured defendant that they had resolved their differences.
>
> fn. 1. No one in the group which defendant confronted outside the trailer was armed.
>
> As the group was leaving the yard, defendant approached Anthon, who had previously lived in the small trailer with Salvador, and asked her why she had brought this commotion to his home. An argument ensued in which Towe and Green told defendant "to quit disrespecting" Anthon. At one point defendant lunged at the group as if he were going to swing the jack handle. Although Green yelled insults at defendant, none of the individuals in the group physically or verbally threatened him. Towe was standing next to Anthon, while defendant's friend Lisa Swett was standing between defendant and Towe, about five feet in front of Towe. Defendant said, "[D]on't make me do this" and either Green or Towe [fn 2] answered, "You don't have the heart, old man." Defendant responded, "I'll show you what kind of heart this old man has," stepped around Swett and struck Towe over the head with the jack handle, using a two-handed overhead swing. Towe died four days later from head injuries suffered in the attack.

/////

2

>fn.2 Anthon, Salvador, and Green testified that Green made the comment, while defendant and his friends testified that Towe made it.

Answer, Ex. C (Court of Appeal opinion) at 1-3.

The Court of Appeal affirmed petitioner's conviction and the California Supreme Court denied review. Answer, Exs. C & E (Supreme Court denial). Thereafter, petitioner sought collateral review of his conviction in Placer County Superior Court, the Court of Appeal and the California Supreme Court, raising ineffective assistance of trial and appellate counsel, and in the Supreme Court instructional error as well. Each court denied these petitions with little or no comment. Answer, Exs. F-H.

II. <u>AEDPA Standards</u>

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a).

Federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

>(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
>
>(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Although "AEDPA does not require a federal habeas court to adopt any one methodology," <u>Lockyer v. Andrade</u>, 538 U.S. 63, 71 (2003), there are certain principles which guide its application.

First, the "contrary to" and "unreasonable application" clauses are different. As the Supreme Court has explained:

/////

3

> A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in Williams [v. Taylor, 529 U.S. 362 (2000)] that an unreasonable application is different from an incorrect one.

Bell v. Cone, 535 U.S. 685, 694 (2002). It is the habeas petitioner's burden to show the state court's decision was either contrary to or an unreasonable application of federal law. Woodford v. Visciotti, 537 U.S. 19, 25 (2002). It is appropriate to look to lower court decisions to determine what law has been "clearly established" by the Supreme Court and the reasonableness of a particular application of that law. See Duhaime v. Ducharme, 200 F.3d 597, 598 (9th Cir. 2000).

Second, so long as the state court adjudicated petitioner's claims on the merits, its decision is entitled to deference, no matter how brief. Lockyer, 538 U.S. at 76; Downs v. Hoyt, 232 F.3d 1031, 1035 (9th Cir. 2000). A court's "postcard" denial is a decision on the merits. Gaston v. Palmer, 387 F.3d 1004, 1013 (9th Cir. 2004). However, when the state court does not issue a "reasoned opinion," this court must undertake an independent review of the claims. Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2002).

Third, in determining whether a state court decision is entitled to deference, it is not necessary for the state court to cite or even be aware of the controlling federal authorities "so long as neither the reasoning nor the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8 (2003). Moreover, a state court opinion need not contain "a formulary statement" of federal law, so long as the fair import of its conclusion is consonant with federal law. Id.

/////

4

III. Ineffective Assistance Of Trial Counsel

The federal law on claims of attorney ineffectiveness is clear:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense.

Strickland v. Washington, 466 U.S. 668, 687 (1984). "[T]he performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances." Id. at 688. A court must "indulge a strong presumption" that counsel's conduct falls within the range of competence. Iaea v. Sunn, 800 F.2d 861, 864 (9th Cir. 1986). Accordingly, this court must determine whether in light of all the circumstances, the identified acts or omissions were outside the wide range of professional competent assistance and a petitioner must overcome the presumption that the act or omission might be an appropriate strategic decision. Id. at 689, 690.

It is also petitioner's burden to establish prejudice: "A defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. This evaluation must be based on the totality of the evidence before the jury, recognizing the probability of a different outcome is less likely in a case "with overwhelming record support." Id. at 695, 696.

Petitioner argues trial counsel was ineffective in the following ways: he failed to cross-examine many prosecution witnesses; refused to call petitioner as a witness; failed to call any of the "long list of potential defense witnesses who were ready to testify to [petitioner's] non-violent personality;" failed to develop a defense theory and did not make a "meaningful adversarial challenge" to the prosecution's case; did not object to prejudicial hearsay during the testimony of Detective Bell; and permitted the testimony of Otto Biggs to be presented through the transcript of the first trial rather than by calling Biggs as a witness. Petition (Pet.) at 11-17.

A. <u>Failure To Cross Examine All Prosecution Witnesses</u>

In support of this argument, petitioner submits the index of witnesses from the front of the Reporter's Transcript, which shows that the prosecution called thirteen witnesses, ten of whom defense counsel cross-examined. Pet., Ex. A. Petitioner does not discuss the testimony of Lori Parks, Robert Myers or Cheryl Davis, whom defense counsel did not question. Petitioner also does not suggest what counsel should have asked these witnesses, who in the context of the case, as discussed below, were peripheral.

Lori Parks, one of three sisters who were friends with petitioner, provided testimony that was a little different than that of her sisters Susan Parks and Lisa Swett, about petitioner's displeasure that Anthon had brought the noise and argument to the trailers, Salvador's assurance to petitioner that things had calmed down and Anthon's promise the group was leaving. RT 206. Like the others, Lori Parks heard someone, perhaps Towe or perhaps Green, taunt petitioner, who rose to the challenge. RT 207. But beyond what she heard, there was little Lori Parks could add to the description of what happened before petitioner struck Towe because she "never went out there . . ." until Towe had crumpled to the ground. RT 207, 209. Eventually Lori Parks called Cheryl Davis, petitioner's former girlfriend, and explained petitioner "needed to get out of there." RT 216. Lori Parks then hid petitioner's drug paraphernalia on her person. RT 217.

Bob Myers, petitioner's uncle, was renting a portion of his trailer to petitioner. RT 271. He heard some commotion on October 23, 1997, but could not really see anything when he looked outside. RT 272.

Cheryl Davis, petitioner's former girlfriend, went to the trailer when she learned petitioner needed a ride. RT 277. When petitioner got in the car, he seemed shaken and worried about Towe. RT 278. Police stopped the car before she could turn around. RT 279.

/////

/////

1    Whether to cross-examine a particular witness is a tactical decision left to counsel,
2 which this court must view with great deference. Dows v. Wood, 211 F.3d 480, 487 (9th Cir.
3 2000).

> It is not [] always the best trial strategy to exploit every
> inconsistency in the statements of a witness, even a witness called
> by opposing counsel.

Cannon v. Mullin, 383 F.3d 1152, 1164 (10th Cir. 2004), cert. denied, __ U.S. __, 125 S. Ct. 1664 (2005). To succeed on such a claim, a habeas petitioner should suggest how counsel should have proceeded. Cf. Henderson v. Norris, 118 F.3d 1283, 1287 (8th Cir. 1997).

Petitioner has not borne his burden of demonstrating ineffective assistance of counsel. Silva v. Woodford, 279 F.3d 825, 835 (9th Cir. 2002). This court cannot find it was outside the range of professionally competent assistance for counsel to eschew cross-examination of those witnesses who did not see the rapidly unfolding events outside the trailer and thus who could not provide information supporting the defense. Moreover, because petitioner has not suggested what questions should have been asked and what information could have been elicited, he has not shown the prejudice necessary to a finding of ineffective assistance of counsel.

B.  Failure To Call Petitioner As A Witness

Petitioner avers that he wanted to testify and so informed trial counsel, who failed to call him to the witness stand. He argues that his testimony would have made a difference, as shown by the first jury's inability to choose between second degree murder and manslaughter. Although petitioner has not submitted a transcript of his testimony from the first trial, he has provided a declaration in which he says, in part:

> 1. I personally asked Mr. Switzer [trial counsel] about testifying in the retrial on more than one occasion. I was told repeatedly that I would not be needing to testify this time.

/////
/////
/////

2. My testimony would have been that I was very afraid that I was about to be jumped by three men, all younger than me and at least two were much larger than myself. My actions were out of fear and not anger.

Pet., Ex. B (Declaration of Terrence Skattebo).

Respondent argues that this issue is waived by petitioner's silence when counsel rested without calling him as a witness, that the decision was an appropriate tactic and that petitioner has not shown prejudice. Answer at 13-15.

The Courts of Appeals are in agreement that a defendant's right to testify is personal and may be relinquished only by him. Brown v. Artuz, 124 F.3d 73, 77-78 (2d Cir. 1997) (recognizing circuit unanimity). The Ninth Circuit has held that a waiver "may be inferred from the defendant's conduct and is presumed from the defendant's failure to testify or notify the court of his desire to do so." United States v. Joelson, 7 F.3d 174, 177 (9th Cir. 1993). Other courts have rejected the Ninth Circuit's position, refusing to find a waiver of the right to testify strictly from a defendant's silence during trial. See Chang v. United States, 250 F.3d 79, 84 (2d Cir. 2001); United States v. Mullins, 315 F.3d 449, 455 (5th Cir. 2002), cert. denied, 541 U.S. 1031 (2004).

Some courts have held that a petitioner's "barebones assertion . . . albeit made under oath, is insufficient to require a hearing or other action on his claim that his right to testify in his own defense was denied him." Underwood v. Clark, 939 F.2d 473, 475-76 (7th Cir. 1991); see also Siciliano v. Vose, 834 F.2d 29, 31 (1st Cir. 1987). Other circuits, including the Ninth Circuit, have expressed some skepticism about such a stringent pleading requirement. Sexton v. French, 163 F.3d 874, 883 (4th Cir. 1998); Brown, 124 F.3d at 80.

Despite these differences, courts also agree that when a habeas petitioner alleges his right to testify has been violated by counsel, the claim must be evaluated under the Strickland test. See, e.g., Nicholas v. Butler, 953 F.2d 1550, 1552 (11th Cir. 1992); Joelson, 7 F.3d at 178 ("the nature of the right to testify . . . essentially is a strategic trial decision with constitutional

8

1  implications"); Brown, 124 F.3d at 79; Rodriguez v. United States, 286 F.3d 972, 984-85 (7th
2  Cir.), cert. denied, 537 U.S. 938 (2002).
3         Under Strickland, this court need not reach the question whether counsel's alleged
4  failure to call petitioner as a witness was "outside the wide range of professionally competent
5  assistance," because petitioner cannot satisfy the prejudice component of the Strickland test.
6  Strickland, 466 U.S. at 690, 697 ("If it is easier to dispose of an ineffectiveness claim on the
7  ground of lack of sufficient prejudice, . . . that course should be followed.")
8         In Rodriguez, the court found the defendant was not prejudiced by his failure to
9  testify when counsel was able to present the substance of the defense without the defendant's
10 testimony.  The court recognized

> [i]t is true that a defendant's testimony "in his own trial is unique
> and inherently significant." But this presumption, standing on its
> own, is not enough to show prejudice under *Strickland*.

13 286 F.3d at 985 (citation omitted).
14        The Fifth Circuit reached a similar conclusion in Mullins, which found no
15 prejudice when counsel presented other witnesses to challenge police testimony and support
16 defendant's story and noted that "a denial by Mullins from the stand would come at a high price."
17 315 F.3d at 456-57.
18        Similarly, in Brown, the court found no prejudice when the proposed testimony
19 would not have supported the defense pursued at trial.  124 F.3d at 81.
20        As noted, petitioner has not submitted a transcript from the first trial, but rather
21 has relied on his declaration to describe his proposed testimony: he was afraid he was about to be
22 "jumped" by three younger, larger men.  This assertion is insufficient to prove prejudice because
23 other evidence placed this theory before the jury, as discussed below.
24        The prosecution introduced petitioner's statement to the police, which had not
25 been offered at the first trial.  Petitioner said he heard arguing at Mark's trailer, so he picked up
26 the jack because "I don't know who these people were."  CT 339.  He acknowledged the "tall

9

guy" [Otto Biggs] told him everything was all right and went out the gate, with Towe following him, but

> [t]hen one guy this one guy started coming at me. I shouted, "Back away back away." And then this other one started come toward me too with the dude with the red shirt. And he had the tall guy was behind me. [sic.] And then I said "Don't come any closer I'm gonna hit you." He says, "go ahead" and he came and I hit him.

CT 331. Petitioner said he was unsure whether Towe had a weapon because he "couldn't see that guy," but he said Green and Towe were "on my yard," or "almost in the yard." CT 335. He insisted they were coming toward him, Green was "real mad," and he was defending himself, though he conceded that Towe had not threatened him. CT 335, 338, 355.

Moreover, whether or not petitioner's testimony to this effect would have supported a claim of "imperfect self-defense," this is not a theory counsel pursued at trial. See RT 344. As the prosecutor noted in argument,

> [t]here is another way to get to voluntary manslaughter and that is if the defendant had an actual but unreasonable belief that he had to defend himself against because [sic] his life was in danger. There's no evidence of that in this trial and you're not going to be asked to consider that.

RT 357. And defense counsel noted, "Did he mean to kill Kenny? The answer is no. Heat of passion is the legal argument." RT 366; see also RT 369 ("It was an intense argument. It was heat of passion.").[2] The "heat of passion" that reduces a murder to voluntary manslaughter "must be such a passion as would naturally be aroused in the mind of an ordinarily reasonable person under the given facts and circumstances." People v. Steele, 27 Cal. 4th 1230, 1252 (2002), cert. denied, 537 U.S. 1115 (2003). In this context, petitioner's testimony is not essential to

/////

/////

---

[2] The choice to pursue one defense and reject another was counsel's and petitioner does not challenge the choice as unreasonable. Bean v. Calderon, 163 F.3d 1073, 1082 (9th Cir. 1998); Turk v. Alvarez, 116 F.3d 1264, 1267 (9th Cir. 1997).

demonstrating that his reaction was one of anger so long as the defense could show the "intense argument" by other means. And in this case, counsel elicited the details of the disagreement from the prosecution witnesses.

Accordingly, because the substance of petitioner's proposed testimony was contained in his statement to the police and because the essence of his heat of passion defense was presented through other witnesses, petitioner cannot demonstrate any prejudice from counsel's refusal to call him as a witness.

C. Failure To Call Defense Witnesses

Petitioner claims he "had a long list of potential defense witnesses who were ready to testify to his non-violent personality." Pet. at 16. However, he cannot bear his burden of showing ineffective assistance of counsel by presenting "mere conclusory statements," United States v. Schaflander, 743 F.2d 714, 721 (9th Cir. 1984), but rather must tender affidavits from the witnesses counsel purportedly neglected to interview or call, showing the "helpful testimony for the defense" they could have presented. Dows, 211 F.3d at 486; Bragg v. Galaza, 242 F.3d 1082, 1088 (9th Cir.), as amended, 253 F.3d 1150 (9th Cir. 2001). Petitioner has not supported his claim with any declarations or witness statements. Accordingly, he cannot prevail on this portion of his claim.

D. Failure To Develop A Defense Theory Or Challenge Prosecution's Case

The basis of this component of petitioner's challenge to trial counsel's performance is somewhat vague, but he quotes from Groseclose v. Bell, 130 F.3d 1161 (6th Cir. 1997) in asserting that counsel failed "to conduct any meaningful adversarial challenge, as shown by his failure to cross-examine many of the prosecution's witnesses, to object to any evidence, to put on defense witnesses. . . ." Pet. at 13.

In Groseclose, three defendants were jointly tried for capital murder. The Sixth Circuit described counsel's performance:

/////

11

> During the guilt phase of the trial, Brackstone [counsel] failed to call a single witness or put on any proof, and, further, advised Groseclose not to testify, despite his lack of a criminal record and despite the fact that he had consistently maintained his innocence. . . . He cross-examined fewer than half of the State's 39 witnesses; his cross-examination of Mount, perhaps the most crucial witness for the State, consisted of a total of 11 pages of transcript. And after failing to present the jury with any evidence on his client's behalf, Brackstone culminated his performance by waiving his closing argument.
>
> When asked during the federal evidentiary hearing whether he thought Brackstone was "effective" or "competent," the attorney for codefendant Britt–who testified for the *State* as an expert witness–responded, "[N]o [,] he was not effective. According to Britt's attorney, "Brackstone was more or less doing what [Rickman's attorney] did to represent his client. He was kind of following [Rickman's attorney's] lead." And as Groseclose's expert witness pointed out, this course was especially ill-judged because "there was no reasonable possibility of a unified defense," given the disparity, indeed hostility, between the parties' interests.

Groseclose, 130 F.3d at 1166 (emphasis in original).

This case is unlike Groseclose. Trial counsel's strategy was to convince the jury to find that petitioner had acted in the heat of passion. His examination of the prosecution's witnesses was designed to show the tension between Biggs, Green and Towe on the one hand and petitioner on the other. In response to counsel's questions, Anthon conceded she was concerned that the men who had accompanied her "might make a wrong move or do something wrong," RT 123; Swett described the group as argumentative and reluctant to leave the fray, RT 191; Salvador could not report what was said because "they were all screaming at each other at that time." RT 154. Those witnesses whom counsel chose not to cross-examine had not been outside during the argument and could add little or nothing to the defense. See page 6 supra. Moreover, as noted above, counsel argued to the jury that the crime was manslaughter because when petitioner swung the jack handle, he was reacting to the "intense argument." RT 369. Finally, also as noted above, petitioner does not present affidavits from those witnesses he faults counsel for not calling. Petitioner has not borne his burden of demonstrating ineffective assistance of counsel.

     E.  <u>Failure To Object To Hearsay</u>

In conclusory fashion, petitioner alleges:

> When Detective Bell was on the stand with the prosecution questioning him under direct, he repeated highly prejudicial hearsay to which the defense made no objection. (See <u>Exhibit E</u>.)

Pet. at 13. The referenced Exhibit E, however, is the transcript of the testimony of Ottomar Biggs; Exhibit D is a portion of the testimony of Detective <u>Bennett</u>, not Detective Bell. Bennett testified that Lori Parks was scared because "she was holding two kits that belonged to Terry" and that she admitted that the weapon was a jack handle, not a piece of wood as she had originally reported; and that Cheryl Davis and Robert Bradford reported they had not seen the incident. RT 41-42; Pet., Ex. D.

A failure to object to inadmissible hearsay may constitute ineffective assistance of counsel. <u>Crotts v. Smith</u>, 73 F.3d 861, 866 (9th Cir. 1996). As with all such claims, however, petitioner must show prejudice from counsel's failure. <u>Smith v. Pliler</u>, 280 F. Supp. 2d 990, 1000 (N.D. Cal. 2003).

While the hearsay portions of Detective Bennett's testimony may have been objectionable, petitioner cannot demonstrate prejudice. Each of the witnesses provided the challenged testimony on direct examination without defense objection: Lori Parks testified she "was holding on to all [petitioner's] personal items," including his rings and his hypodermic needles when they left the trailer. RT 217.[3] Bradford testified he had told the police at first he did not see the confrontation, and Davis testified that she in fact did not. RT 242, 277. Because the substance of the hearsay was admitted by direct testimony, there can be no prejudice from counsel's failure to object.

/////

/////

---

[3] Petitioner does not challenge counsel's failure to object to this testimony.

13

F.  Acquiescence In The Use Of Biggs' Former Testimony

At petitioner's first trial, defense witness Biggs attempted to explain why Anthon and her friends were upset about the bike, why the group went to Salvador's trailer, and the noise made by the argument in the trailer.  ACT 4, 9, 10.  Biggs heard someone outside the trailer asking what was happening, so the group went outside.  ACT 10.  Petitioner was already armed with the jack handle and told Anthon, Green and Towe to "get back" because they "were remaining hostile."  ACT 13, 15.  Towe was "[p]ossibly looking intimidating," but none of them made a move toward petitioner.  ACT 17-18, 33.  Nevertheless, Biggs could tell that "they were frustrating Terry.  And I could tell that he wasn't understanding what was going on" because they had confronted petitioner.  ACT 30, 41.

Petitioner said to Towe, "You don't think I'll do it," and Towe said, "no."  ACT 37.  Petitioner swung the pipe, but Towe did not attempt to move; "maybe he didn't see it coming."  ACT 20.

By the time of petitioner's second trial, defense counsel agreed to have the transcript of Biggs' testimony read to the jury.  RT 300-301.  Petitioner argues that this decision "removed the duty from the jury of assessing truthfulness by actually seeing [Biggs] and his demeanor in testifying in person."  Pet. at 13.

A witness's demeanor while testifying may be an important factor for the jury to consider when assessing credibility.  Maryland v. Craig, 497 U.S. 836, 845 (1990).  Nevertheless, an attorney's decision not to call a witness based on a determination the witness's demeanor will "be unhelpful to his case" is entitled to deference, as are other tactical decisions.  See Jones v. Murray, 947 F.2d 1106, 1113 (4th Cir. 1991).

In this case, counsel had the opportunity to evaluate Biggs as a live witness during petitioner's first trial; his decision to rely on the transcript might well have been based on the fact that Biggs' demeanor was not helpful to petitioner.  Petitioner has provided no description or

/////

evaluation of Biggs' performance on the stand and thus has not suggested how his live testimony was superior to the transcribed account.

In addition, Biggs' testimony was not without its problems: while he described Green and Towe as confrontational and hostile, he confirmed the other witnesses' graphic description of petitioner's hard blow against a victim who was obviously not expecting an attack.

Moreover, it is significant that it was the prosecutor, not defense counsel, who sought to use Biggs' testimony as part of his case, RT 300, though he had been a defense witness in the first trial. This suggests that both counsel evaluated his testimony as less than completely favorable to the defense.

For all these reasons, petitioner has not shown that counsel's decision to rely on the transcript of Biggs' testimony was an unreasonable tactical determination.

IV.  Ineffective Assistance Of Appellate Counsel

Petitioner claims appellate counsel was ineffective for his failure to argue trial counsel's ineffectiveness on appeal and to argue that the omission of certain jury instructions violated due process. Pet. at 19-20.

Because this court has determined there was no prejudicial ineffective assistance of counsel, and determines below that the court's failure to give instructions on lesser included offenses does not raise a constitutional issue, appellate counsel violated no duty to petitioner by failing to raise these issues. Jones v. Smith, 231 F.3d 1227, 1239 n.8 (9th Cir. 2000).

V.  Court's Failure To Instruct

Petitioner argues that the trial court erred in failing to instruct on imperfect self defense and in defining involuntary manslaughter. Pet. at 21-22.

The state Court of Appeal rejected both arguments in considering petitioner's direct appeal:

/////

/////

> In sum, while the record supports the theory that defendant acted in anger and in the heat of passion, there is no substantial evidence from which a jury could find that defendant attacked the victim because he felt his life was in "imminent peril."
>
> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
>
> In sum, there is no substantial evidence defendant committed the homicide unintentionally while brandishing the jack handle or threatening the victim with it. The trial court had no duty to instruct on involuntary manslaughter, and accordingly defendant's claim of error must fail.

Answer, Ex. C at 5-6, 8.

In California, voluntary manslaughter based on imperfect self-defense is "a shorthand description of one form of voluntary manslaughter" and thus is a lesser included offense to second degree murder. Involuntary manslaughter is also a lesser included offense to second degree murder. People v. Ochoa, 19 Cal. 4th 353, 422 (1998).

The Supreme Court declined to reach the question whether there is a constitutional right to an instruction on a lesser included offense unless a defendant is charged with a capital offense. Beck v. Alabama, 447 U.S. 625, 638 n.14 (1980). The Ninth Circuit has said there is not explicitly. See Windham v. Merkle, 163 F.3d 1092, 1106 (9th Cir. 1998), cert. denied sub nom. Windham v. Runnels, 541 U.S. 950 (2004). However, if a lesser included offense is part of the theory of the defense, the failure to instruct on that included offense may violate the Sixth and Fourteenth Amendments. See Solis v. Garcia, 219 F.3d 922, 929 (9th Cir. 2000).

In this case, neither imperfect self-defense nor involuntary manslaughter were offered as the defense theory of the case: trial counsel repeatedly told the jury that the proper verdict was voluntary manslaughter based on the "intense argument" that aroused petitioner to such an extent that the killing was undertaken in the heat of passion. See RT 366, 369. Accordingly, the court's failure to instruct on these lesser included offenses raises no federal constitutional issue.

1  Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within ten days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED:  June 24, 2005.

_____
UNITED STATES MAGISTRATE JUDGE

2/skat1107.157